IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
ROSE MARIE LAMBERTY,              )
                                  )
            Plaintiff,            )
                                  )
     v.                           )      Case No.13-4072-RDR
                                  )
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of            )
Social Security,                  )
                                  )
            Defendant.            )
```

**MEMORANDUM AND ORDER**

On July 16, 2010, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of June 25, 2009. On March 2, 2012, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on March 20, 2012 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the

claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 9-19).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 9-11). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth and last step of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through September 30, 2012. Second, plaintiff did not engage in substantial gainful activity after June 25, 2009, the alleged onset date of disability. Third, plaintiff has the following severe impairments: fibromyalgia; degenerative joint disease; back problems; borderline intellectual functioning; depression; and post-traumatic stress disorder. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform:

> sedentary work . . . [in that plaintiff] is able to lift and carry 10 pounds frequently and occasionally. She can walk/and stand for 2 hours in an 8-hour day and can sit for up to 6 hours in an 8-hour day. However, she is limited to simple routine repetitive work with only occasional interaction with the public.

(Tr. 13). The ALJ also found that plaintiff has mild restrictions in the activities of daily living, moderate

4

difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. (Tr. 12). Sixth, plaintiff is unable to perform any past relevant work. But, seventh, plaintiff is capable of performing jobs that exist in significant numbers in the national economy, such as: wire patcher, ampule sealer and administrative support worker. (Tr. 18). This last finding was based upon the testimony of a vocational expert. The ALJ also considered plaintiff's age, education, work experience and residual functional capacity. The ALJ found that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT).

III. THE DECISION TO DENY BENEFITS MUST BE REVERSED BECAUSE THE ALJ FAILED TO PROPERLY WEIGH THE OPINIONS OF DR. MHATRE AND LYNN WAGNER-KNIGHT.

Plaintiff's first argument to overturn the denial of benefits is that the ALJ failed to properly evaluate certain opinions. Plaintiff focuses, first, upon the opinion of Dr. Vijay Mhatre, plaintiff's treating physician since June 3, 2010, who has diagnosed and treated plaintiff for fibromyalgia and other conditions, including low back pain, fatigue and insomnia.

According to the Tenth Circuit, "an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion . . . [and the reasons] must be sufficiently specific to make clear to any subsequent reviewers the weight the

5

adjudicator gave to the treating source's medical opinion and the reasons for that weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003)(interior quotations and citations omitted). "'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his own or her own credibility judgments, speculation or lay opinion.'" Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(quoting McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Dr. Mhatre completed a form regarding plaintiff's ability to do work-related activities. His answers indicated that plaintiff could stand and walk less than two hours during an 8-hour day and that she could sit less than two hours during an 8-hour day. (Tr. 437). He stated that plaintiff would need to lie down at unpredictable intervals and every two hours, and that she would need to be absent from work more than three times a month. (Tr. 438 & 440). These limitations and others mentioned by Dr. Mhatre were inconsistent with any substantial gainful activity, according to the vocational expert who testified during the administrative hearing. (Tr. 52). The ALJ did not dispute Dr. Mhatre's diagnosis of fibromyalgia and low back pain, or challenge Dr. Mhatre's credentials or his clinical

6

or diagnostic techniques. But, the ALJ only gave Dr. Mhatre's conclusions "partial weight" on the grounds that "the medical record, including the objective evidence, indicates that [plaintiff] is not so limited and can perform work consistent with the residual functional capacity [determined by the ALJ]." (Tr. 17). Unfortunately, the ALJ did not specify which parts of the medical record persuasively contradicted Dr. Mhatre's conclusions regarding plaintiff's functional abilities, or which parts of the medical record persuasively supported the ALJ's conclusions regarding plaintiff's functional abilities. So, the court shall look at the ALJ's general review of the evidence.

The ALJ reviewed the evidence on pages 14-17 of the administrative record. He noted the following points with regard to plaintiff's physical impairments:

- An MRI in October 2010 showed normal spine alignment;
- A whole body scan in November 2010 was unremarkable;
- In December 2010 when plaintiff appeared at a hospital emergency room for low back pain, she ambulated without assistance and an examination found no motor weakness or numbness;
- Plaintiff engaged in physical therapy in 2011 and reported improvement and interest in exercise;
- A physical examination with the Pain Center of Kansas showed a normal gait, normal range of motion, and normal muscle mass, tone and strength, although an assessment of low back pain was made;
- During an emergency room visit for back pain in December 2010, no motor weakness or numbness was noted and bone scans were normal;
- Physical therapy notes indicated on one occasion that plaintiff's pain was only 0-4;

7

- Plaintiff has attended church on occasion and gone to the grocery store accompanied by her daughter. She can prepare simple meals, help with laundry and dishes, and has cared for a granddaughter. She took her granddaughter roller skating twice – plaintiff fell and hurt her tailbone while skating. And she went unaccompanied to Hobby Lobby where an acquaintance thought she appeared to be walking quickly and with pleasant affect.

Among other factors, an ALJ should consider how a treating physician's opinion is supported by relevant evidence and consistency between that opinion and the record as a whole. Watkins, 350 F.3d at 1301. In this case, however, the ALJ does not explain why the MRI, bone scan and body scan results are inconsistent with Dr. Mhatre's fibromyalgia diagnosis and the doctor's conclusions as to plaintiff's functional abilities. The ALJ may not be attempting to make this point; his opinion is unclear. But, in the event that he is, he cites no authority or reasoning for finding that such test results are relevant to fibromyalgia.[1] It is more likely perhaps that the ALJ is referring to the various scan results with regard to plaintiff's low back pain. But, again, the ALJ does not explain why the results are inconsistent with plaintiff's complaints of low back pain.[2] Possibly, the ALJ is inferring from observations of

---

[1] Other courts have noted that "[f]ibromyalgia cannot be proved by objective test findings." Wyatt v. Astrue, 2011 WL 322816 *6 (D.Kan. 1/31/2011); see also Jones v. Colvin, 2014 WL 545607 *6 (D.Kan. 2/11/2014)(there are no laboratory tests to identify the presence or severity of fibromyalgia); Gibbs v. Colvin, 2013 WL 823412 *3 (D.Kan. 3/6/2013)(same).

[2] One MRI showed "slight disk space narrowing" and suggested early stages of progressive degenerative disk disease in the lower lumbar spine. (Tr. 673).

8

normal gait, range of motion, and muscle mass that plaintiff is more active than Dr. Mhatre has suggested. But, this is speculation, especially in light of plaintiff's testimony and other entries in the record showing that plaintiff's condition can vary significantly so that she will have good days and bad days.[3] That plaintiff's pain has been rated at 0-4 on an occasion is not substantially different from Dr. Mhatre's observations of pain at 2-4 "on a good day," but 5 or 6 "on the worst day" (Tr. 423); or pain "most of the time" at 4-5, but 6-7 at worst (Tr. 842).[4] It does not disprove the conclusion that plaintiff has too many "bad days" a month to sustain substantial gainful employment. Finally, the fact that plaintiff has gone out on occasion for church or to be with her granddaughter, or that plaintiff can provide some help around the house, is not significantly inconsistent with Dr. Mhatre's assessment of plaintiff's functional abilities. See Walden v. Astrue, 2012 WL 3733305 *5 (D.Kan. 8/28/2012)(rejecting an ALJ's discrediting of

---

This may have provided the basis for the ALJ's finding that plaintiff had degenerative joint disease.

[3] In Burgess v. Colvin, 2013 WL 4482711 *4 (D.Kan. 8/21/2013), the court criticized as speculation an ALJ's reference to normal gait pattern as objective evidence contrary to a treating physician's opinion of limitations from fibromyalgia.

[4] Plaintiff reported pain at varying levels between 0 and 10 during the first half of 2011 when she had physical or occupational therapy sessions. (Tr. 814-829). Plaintiff also had therapy in January 2012 following her tailbone injury from the skating rink fall. (Tr. 806-812). She reported relief from pain, but she may have been referring only to her tailbone. (Tr. 43).

Dr. Mhatre's opinion on the basis of somewhat similiar activities of daily living).

In sum, the court concludes that the ALJ has failed to adequately analyze the opinion of Dr. Mhatre.

Plaintiff makes the same argument regarding the ALJ's analysis of the opinion of Lynn Wagner-Knight, plaintiff's social worker who completed a mental residual functional capacity evaluation. Ms. Wagner-Knight saw plaintiff from late February 2011 to August 2011. Her evaluation indicated among other things that plaintiff would do poorly at following even simple instructions. (Tr. 700). The evaluation also stated that plaintiff would do poorly at every one of 16 abilities and aptitudes needed to do unskilled work, including the abilities to: make simple work-related decisions; perform at a consistent pace without unreasonable number and length of rest periods; deal with normal work stress; sustain ordinary routine without special supervision; and maintain attention for two hour segment. Ms. Wagner-Knight mentioned the side effects of plaintiff's medication as a factor in plaintiff's confusion and incoherence. The ALJ concluded that Ms. Wagner-Knight was not an acceptable medical source and afforded her opinion minimal weight. He noted that her opinion was inconsistent with plaintiff's Hobby Lobby shopping trip, with plaintiff's fixing simple meals and helping with laundry and dishes, and with

10

plaintiff's aid in raising her granddaughter and going to the grocery store with the assistance of her daughter.

The ALJ is correct that Ms. Wagner-Knight is not an "acceptable medical source" within the meaning of the regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a)(defining the term). Her opinion is not entitled to consideration as a "medical opinion" under the regulations. But, it could be considered to show the severity of plaintiff's limitations and how they affected her ability to work. Wells v. Colvin, 727 F.3d 1061, 1073-74 (10th Cir. 2013).

We agree with plaintiff that the ALJ's dismissal of Wagner-Knight's evaluation as inconsistent with reports of minimal household activities, sporadic trips outside the house, and undelineated assistance in raising a granddaughter, lacks a clear or persuasive rationale. See Borgsmiller v. Astrue, 499 Fed.Appx. 812, 818-19 (10th Cir. 10/17/12)(may not rely on evidence of minimal daily activities - - washing dishes and preparing meals on "good days" - - as substantial evidence of no disabling pain); Krauser v. Astrue, 638 F.3d 1324, 1332-33 (10th Cir. 2011)(limited yard work, exercise, and housework are not inconsistent with significant physical limitations); Madron v. Astrue, 311 Fed.Appx. 170, 177 (10th Cir. 2/11/2009)(cooking, travel to grocery store and limited household chores do not prove ability to do substantial gainful activity); Thompson v.

11

Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)(visiting neighbors and light housework do not establish a person is capable of engaging in substantial gainful activity); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(working in yard, performing a few household tasks, working on cars, and taking an occasional trip with brother in a camper, do not establish without more evidence, an ability to perform substantial gainful activity). While these cases concern an evaluation of the disabling effects of pain, they also demonstrate that occasional household tasks or other activities do not prove an aptitude to do unskilled work under the stress and pace demanded by most employers.

In sum, the court does not believe the sporadic activities described by the ALJ are inconsistent with Ms. Wagner-Knight's assessment that plaintiff would be unable to perform unskilled work. Since the ALJ bases his rejection of Ms. Wagner-Knight's opinion on this ground, the court finds that the ALJ improperly considered her opinion.[5]

---

[5] The ALJ gave "weight" to the opinion of Dr. Robert Barnett a licensed psychologist and an acceptable medical source under the regulations and "significant weight" to the assessments of state agency consultants whose findings were considered consistent with Dr. Barnett's findings. Dr. Barnett performed a mental status examination of plaintiff in October 2010. He concluded that plaintiff functioned in the borderline range and "showed pronounced difficulty with both attention and concentration during the interview." (Tr. 444). He concluded that plaintiff appeared "cognitively capable of simple repetitive work tasks but her ability to perform complex tasks would be limited by her low intellectual functioning as well as her symptoms of depression and anxiety." It might be reasonable for the ALJ to reject Ms. Wagner-Knight's opinion as inconsistent with that of Dr. Barnett and other sources. Wells, 727 F.3d at 1074. However, this was not the reason with the ALJ gave for discrediting Ms. Wagner-Knight's opinion. Moreover, the concentration problems noted by Dr. Barnett and other sources

IV. THE DECISION TO DENY BENEFITS MUST ALSO BE REVERSED BECAUSE THE ALJ IMPROPERLY ANALYZED PLAINTIFF'S CREDIBILITY.

The ALJ's analysis of plaintiff's credibility relied on the same points as the ALJ's evaluation of the opinions of Dr. Mhatre and Ms. Wagner-Knight. In general, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." (Tr. 15).

Plaintiff asserts that the ALJ's analysis was improper because: the ALJ ignored plaintiff's persistent attempts to find pain relief; the ALJ overlooked plaintiff's use of an assistive device; the ALJ failed to consider how plaintiff's psychiatric impairments might affect her complaints of pain; the ALJ misconstrued the significance of plaintiff's daily activities; the ALJ failed to acknowledge the extensive amount and negative effects of plaintiff's medications; and the ALJ unfairly portrayed portions of the record as damaging to plaintiff's credibility.

---

(Tr. 444, 610, 612, and 614), and given credence by the ALJ (Tr. 12), could impact plaintiff's ability to perform even simple work. Bowers v. Astrue, 271 Fed.Appx. 731, 733-34 (10th Cir. 3/26/2008); Wiederholt v. Barnhart, 121 Fed.Appx. 833, 839 (10th Cir. 2/8/2005); Price v. Colvin, 2014 WL 1246762 *4 (D.Kan. 3/26/2014). There is no indication that the vocational expert considered these limitations.

13

As discussed above, the court believes that the ALJ has relied too heavily upon plaintiff's daily and occasional activities to support his conclusions and analysis. Remand for reconsideration of plaintiff's credibility is justified for this reason alone. In addition, the ALJ did not refer to or inquire in any detail as to the side effects of plaintiff's medication. Plaintiff takes a large number of medications. (Tr. 844-45, 260-61). Plaintiff has reported fatigue and sleepiness because of medication (Tr. 261), and she stated that she could not return to her former employment because of the strong narcotics she was taking. (Tr. 32). Ms. Wagner-Knight commented that plaintiff's strong pain medication had "extreme negative side effects" and left her "very disoriented." (Tr. 700). While an ALJ is not obliged to engage in a point-by-point discussion of every factor relating to credibility (Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009)), we believe remand is warranted when the record indicates that the ALJ did not properly consider at least two relevant factors as to credibility, such as plaintiff's daily activities and plaintiff's use of medication and its side effects. See SSR 96-7p, 1996 WL 374186 at *3 (listing factors for consideration in determining credibility).

The remainder of the ALJ's credibility analysis is not so persuasive as to convince the court that the ALJ's findings are closely linked to substantial evidence, even though we

14

acknowledge that credibility determinations are normally the province of the ALJ. The ALJ attempted to draw a distinction between plaintiff's former employer not holding a job open for her and plaintiff not being physically able to perform the job, when plaintiff's testimony on this subject appears to combine the two points.[6] The ALJ also suggested that plaintiff linked her pain to a specific tailbone injury at one point in her testimony, in contradiction to her later testimony that her pain was not linked to a specific injury. Plaintiff's testimony, however, was not clearly contradictory. She stated that her pain is worse in her lower back "by my tail bone area," and that the pain has been there a long time. (Tr. 34). She also denied having a specific tailbone injury. When questioned later about the roller skating fall in October 2011, she seemed to indicate that the fall caused her tailbone to hurt, but that was not the source of her previous pain. (Tr. 43). Plaintiff stated: "[W]hat bothers me isn't my tail bone, it's my - - I have L4-5 and something, L3, 4 and 5 that's messed up, it's not the tail bone. So they asked me what was hurting, and that had never

---

[6] Plaintiff stated: "A. But it took [the doctors] a long time to figure it out [that plaintiff had fibromyalgia] and I was off past the required time they . . . were required to hold my position. And so they said my position was no longer available, and that because I had to take pain pills all the time for the pain, that I wasn't able to do my job under strong narcotics, so they wouldn't give me the position back.
    Q. Exhibit 6[E] page 4 is a statement they completed. It says here on page 4 'took 12 weeks of leave for medical reasons and still not able to meet physical requirements to return to work.' Is that what you're talking about?
    A. Yeah."
(Tr. 32-33).

15

hurt before." Id. Again, while the court honors the ALJ's authority to make credibility decisions, we do not believe the inconsistencies in testimony are so blatant that the ALJ's credibility analysis may overcome the other deficiencies described in this opinion.

V. OTHER POINTS TO CONSIDER ON REMAND

Because the court believes that remand is necessary for the reasons already stated, the court will not decide plaintiff's other arguments for remand. The court would comment, however, that as alleged by plaintiff, the ALJ did not specifically address the functional limitations which plaintiff might suffer from foot problems and her obesity. The court recommends that these issues be given specific consideration by the ALJ on remand.

VI. THE COURT SHALL NOT DIRECT AN IMMEDIATE AWARD OF BENEFITS.

While the court has discretion to reverse and remand for an award of benefits, the court shall not do so because the court believes that additional fact finding and analysis may clarify the nature and extent of plaintiff's physical and mental impairments. The court further notes that this action is in accord with the relief requested in plaintiff's reply brief. Doc. No. 17 at p. 15.

VII. CONCLUSION

The court shall reverse defendant's decision to deny plaintiff's applications for benefits. The court shall direct that this case be remanded to the Commissioner for further proceedings consistent with this opinion. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated this 3rd day of April, 2014, at Topeka, Kansas.

s/Richard D. Rogers  
Richard D. Rogers  
United States District Judge